UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:21-cr-253-MOC |
| | ) | |
| v. | ) | **BILL OF INDICTMENT** |
| | ) | |
| MICHAEL MANDEL BALDWIN | ) | 15 U.S.C. §§ 78j(b) & 78(ff) |
| | ) | 18 U.S.C. § 1343 |

**THE GRAND JURY CHARGES:**

At the specified times and at all relevant times:

### Introductory Allegations

1. From at least 2009 through the date of this Bill of Indictment, the defendant MICHAEL MANDEL BALDWIN induced victims, including a church located in Charlotte, North Carolina, to invest in his company Miracle Mansion, LLC (Miracle Mansion). BALDWIN fraudulently obtained more than $740,000 from investors by making false representations that their money would be used to develop Miracle Mansion, including to purchase the land on which Miracle Mansion would be located. In truth and fact, BALDWIN used a significant amount of victim money on personal expenses, including credit card payments, cash withdrawals, travel, and restaurants.

### Background

2. BALDWIN was a resident of the Alexandria, Virginia. BALDWIN was a Member and the Chief Executive Officer of Miracle Mansion.

3. On or about April 3, 2009, BALDWIN caused Miracle Mansion, LLC to be incorporated in the Commonwealth of Virginia. Miracle Mansion was headquartered in Alexandria, Virginia. BALDWIN failed to maintain active incorporation of Miracle Mansion and on July 31, 2017, its registration was automatically cancelled by the Commonwealth of Virginia and has not been reinstated.

4. Victim #1 was the pastor of a Charlotte-area church.

5. Victim #2 was a Charlotte-area church. Victim #1 controlled Victim #2's finances. In addition to the pastor, Victim #2 employed several individuals.

6. Additional victims were located throughout the United States, including in Virginia, Arkansas, Florida, and Georgia.

## The Fraudulent Scheme

7. Beginning in at least 2009, BALDWIN solicited investments in Miracle Mansion from individuals and entities by making fraudulent representations about the purpose, legitimacy, and success of Miracle Mansion. As part of those solicitations, BALDWIN created and distributed investment prospectuses and promotional materials (collectively, "promotional materials") to potential investors and met with investors in person and virtually through web, video, and telephonic conferences.

8. During these meetings and in the promotional materials, BALDWIN described Miracle Mansion as "a one-of-a-kind entertainment complex that [would] reshape the face of family entertainment in the Washington Metropolitan region" and stated that its mission was "to provide a high-quality performing arts experience that promotes family-focused inspiration, entertainment and enrichment anchored by a Biblical worldview."

9. BALDWIN, in person and in the promotional materials, falsely represented that The Kennedy Center and high-level executives at Hobby Lobby and Chik-Fil-A had endorsed and supported Miracle Mansion.

10. BALDWIN, in person and in the promotional materials, described several types of investment opportunities in Miracle Mansion, including GroundSwell 73 and a variable rate note. For example, in promotional materials:

   a. GroundSwell 73 was described as "73 acres = 7,300 people, investing $73 per month, for 73 months."

   b. The variable note was described as a "note based on a minimum investment of $1,000 [that] will be structured to have a repayment term of no less than 5 years from the execution date of the agreement."

   c. The return on investment was based on the "one-year Libor Rate plus 3% not to exceed 7.3% annually and will adjust on the anniversary of the first installment and mature after 73 months."

11. As part of the fraudulent scheme, BALDWIN falsely represented to victims that their investments would be used to further the purpose of Miracle Mansion, including for operational expenses such as zoning and the purchase of land.

12. BALDWIN solicited investors, including Victim #1 and Victim #2 in the Western District of North Carolina, and elsewhere, to invest in Miracle Mansion. For example:

   a. Beginning in or about July 2015, BALDWIN solicited funds from Victim #1 and Victim #2. BALDWIN, in person and virtually, as well as in the promotional materials, made false representations to Victim #1 and Victim #2 about how the investment funds would be used.

   b. On or about September 22, 2015, Victim #1 took an advance on his retirement benefits with Victim #2 to invest $60,000 in Miracle Mansion. Victim #1 caused a $60,000

check to be issued from Victim #2 in BALDWIN's name. BALDWIN deposited the $60,000 investment from Victim #1 into his personal bank account at BB&T ending 6374.

    c. On or about October 6, 2015, Victim #1 caused Victim #2 to make an investment in Miracle Mansion on behalf of several of Victim #2's employees. Victim #1 caused a $10,000 check to be issued from Victim #2 in BALDWIN's name. Instead of depositing the check in a Miracle Mansion business account, BALDWIN deposited the $10,000 on behalf of Victim #2's employees into his personal bank account at BB&T ending 6374.

    d. In or about the January 2016, BALDWIN solicited funds from Victim #2, including by making a virtual presentation to the entire congregation. On or about February 23, 2016, Victim #2 made an investment with BALDWIN on behalf of the church itself. Victim #1 caused a $302,000 wire to be issued from Victim #2 to Miracle Mansion. The wire was deposited into a Miracle Mansion account at Bank of America ending 2963.

    13. As part of the fraudulent scheme, and contrary to the representations to investors, rather than using the victims' money to further Miracle Mansion's purpose, BALDWIN spent hundreds of thousands of dollars of victim money on his personal lifestyle. He used at least $150,000 to pay others involved in Miracle Mansion. He also used investor money to make Ponzi type payments to previous victims.

    14. In order to continue the fraudulent scheme and avoid detection, BALDWIN made, and caused to be made, materially false and fraudulent representations, concealed, and caused to be concealed, material facts, and told, and caused to be told, deceptive half-truths to lull victims into thinking their investments were safe when they asked about the status of their investments, including at a congregation meeting at Victim #2 on or about February 25, 2018.

## COUNT ONE
15 U.S.C. §§ 78j and 78ff
(Securities Fraud)

15. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 14 of the Bill of Indictment, and further alleges that:

16. From at least early 2009 through the date of this Bill of Indictment, in Mecklenburg County, within the Western District of North Carolina and elsewhere, the defendant,

**MICHAEL MANDEL BALDWIN**

willfully, directly and indirectly, by use of the means and instrumentalities of interstate commerce and the mails, used and employed manipulative and deceptive devices and contrivances by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would and did operate as a fraud and deceit upon investors and others, in connection with the sale of securities, to wit: the investments in Miracle Mansion described above.

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18 United States Code, Sections 2 and 3147.

## COUNT TWO
18 U.S.C. § 1343
(Wire Fraud)

17. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 14 of the Bill of Indictment, and further alleges that:

18. From at least as early as 2009 through the date of this Bill of Indictment, in Mecklenburg County, within the Western District of North Carolina and elsewhere, the defendant,

**MICHAEL MANDEL BALDWIN**

with the intent to defraud, did knowingly and intentionally devise the above-described scheme and artifice to defraud and to obtain money by materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice to defraud, did transmit and cause to be transmitted by means of wire communication in interstate commerce any writing, signal, picture, and sound, *to wit*, emails, telephone calls, wire transfers, and other electronic financial transaction in interstate commerce.

All in violation of Title 18, United States Code, Section 1343.

## NOTICE OF FORFEITURE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

a. All property which constitutes or is derived from proceeds of the violations set forth in this Bill of Indictment;

b. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a).

The following property is subject to forfeiture on one or more of the grounds stated above:

a. A forfeiture money judgment in the amount of at least $611,334.91 or such other amount as determined by the Court, such amount constituting the proceeds of the violations set forth in this Bill of Indictment.

A TRUE BILL:

FOREPERSON

WILLIAM T. STETZER
ACTING UNITED STATES ATTORNEY

*Caryn Finlay*

CARYN FINLEY
ASSISTANT UNITED STATES ATTORNEY