IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:21-CR-253-MOC |
| | ) | |
| | ) | **SUPERSEDING BILL OF** |
| v. | ) | **INDICTMENT** |
| | ) | |
| | ) | 15 U.S.C. §§ 78j(b) & 78(ff) |
| MICHAEL MANDEL BALDWIN | ) | 18 U.S.C. § 1343 |
| | ) | |

**THE GRAND JURY CHARGES:**

At the specified times and at all relevant times:

**Introductory Allegations**

1.      From at least 2009 through on or about October 19, 2021, the defendant MICHAEL MANDEL BALDWIN induced victims, including a church in Charlotte, North Carolina, to invest in his company Miracle Mansion, LLC (Miracle Mansion). BALDWIN fraudulently obtained more than $740,000 from investors by making false representations that their money would be used to create, develop, and construct Miracle Mansion, including to purchase the land on which Miracle Mansion would be located. In truth and fact, BALDWIN used a significant amount of victim money for his personal use and benefit, including credit card payments, cash withdrawals, travel, and restaurants.

**Background**

2.      BALDWIN was a resident of Alexandria, Virginia, where he served as an Assistant Pastor and the Minister of Music for a Bailey's Crossroads, Virginia, church.

3.      BALDWIN was the President and Chief Executive Officer of Miracle Mansion. During meetings and in promotional materials, BALDWIN described Miracle Mansion as "a one-of-a-kind entertainment complex that [would] reshape the face of family entertainment in the Washington Metropolitan region" and stated that its mission was "to provide a high-quality performing arts experience that promotes family-focused inspiration, entertainment and enrichment anchored by a Biblical worldview."

4.      On or about April 3, 2009, BALDWIN caused Miracle Mansion, LLC to be incorporated in the Commonwealth of Virginia. Miracle Mansion was headquartered in Alexandria, Virginia. At various times after 2009, BALDWIN failed to maintain active incorporation of Miracle Mansion and, on July 31, 2017, Miracle Mansion's registration was automatically cancelled by the Commonwealth of Virginia and has not been reinstated.

5. Victim #1 was a Charlotte-area church. K.S. was the pastor of Victim #1. K.S. controlled Victim #1's finances. In addition to K.S., Victim #1 employed several individuals. K.S. made representations to Victim #1 about Miracle Mansion on behalf of BALDWIN.

6. Additional victims were located throughout the United States, including in Virginia, Arkansas, Florida, and Georgia.

## The Fraudulent Scheme

7. Beginning in at least 2009, BALDWIN solicited investments in Miracle Mansion from individuals and entities by making, and causing to be made, fraudulent representations about the viability, legitimacy, and success of Miracle Mansion. As part of those solicitations, BALDWIN created, caused to be created, and distributed investment prospectuses and promotional materials (collectively, "promotional materials") to potential investors, and he met with investors in person and virtually through web, video, and telephonic conferences.

8. BALDWIN, in person, in the promotional materials, and through other individuals, falsely represented that The Kennedy Center and respected and influential people and entities had endorsed and supported Miracle Mansion.

9. BALDWIN, in person, in the promotional materials, and through other individuals, described several types of investment opportunities in Miracle Mansion, including GroundSwell 73 and a variable rate note. For example, in promotional materials:

a. GroundSwell 73 was described as "73 acres = 7,300 people, investing $73 per month, for 73 months."

b. The variable note was described as a "note based on a minimum investment of $1,000 [that] will be structured to have a repayment term of no less than 5 years from the execution date of the agreement."

c. The return on investment was based on the "one-year Libor Rate plus 3% not to exceed 7.3% annually and will adjust on the anniversary of the first installment and mature after 73 months."

10. As part of the fraudulent scheme, BALDWIN falsely represented, and caused to be represented, to victims that their investments would be used to further the creation, development, and construction of Miracle Mansion, including for operational expenses such as zoning and the purchase of land.

11. BALDWIN solicited, and caused to be solicited, investors, including Victim #1 in the Western District of North Carolina, and elsewhere, to invest in the creation, development, and construction of Miracle Mansion. For example:

a. Beginning in or about July 2015, BALDWIN solicited funds from K.S. and Victim #1. BALDWIN, in promotional materials, in person, virtually, and through other individuals, made false representations to K.S. and Victim #1 about how the investment

2

funds would be used, including for the creation, development, and construction of Miracle Mansion.

b. On or about September 22, 2015, K.S. caused Victim #1 to issue an $60,000 advance on K.S.'s retirement benefits with Victim #1 so K.S. could invest in Miracle Mansion. K.S. caused Victim #1 to issue a $60,000 check in BALDWIN's name from its bank account. Instead of depositing the $60,000 check into a Miracle Mansion bank account, BALDWIN deposited the $60,000 check into his personal bank account at BB&T ending 6374. BALDWIN did not use the $60,000 for the creation, development, and construction of Miracle Mansion.

c. On or about October 6, 2015, K.S. caused Victim #1 to make an $10,000 investment in Miracle Mansion on behalf of several of Victim #1's employees. K.S. caused Victim #1 to issue a $10,000 check in BALDWIN's name from its bank account. Instead of depositing the $10,000 check into a Miracle Mansion bank account, BALDWIN deposited the $10,000 check into his personal bank account at BB&T ending 6374. BALDWIN did not use the $10,000 for the creation, development, and construction of Miracle Mansion.

d. In or about January 2016, BALDWIN solicited, and caused to be solicited, funds from Victim #1, including by making a virtual presentation to the deacons and then to the entire congregation. On or about February 23, 2016, based on representations and promises made by BALDWIN, Victim #1 made a $302,000 investment with BALDWIN for the creation, development, and construction of Miracle Mansion. Victim #1 caused a $302,000 wire to be issued from its bank account to Miracle Mansion. The wire was deposited into a Miracle Mansion bank account at Bank of America ending 2963. BALDWIN did not use the $302,000 for the creation, development, and construction of Miracle Mansion.

e. After Victim #1's investment, including at congregational meetings at Victim #1 on or about October 23, 2017 and on or about February 25, 2018, congregational members asked K.S. and BALDWIN about the status of the investment and the progress of the development and construction of Miracle Mansion. BALDWIN made, and caused to be made, materially false and fraudulent representations, concealed, and caused to be concealed, material facts, and told, and caused to be told, deceptive half-truths to lull victims into thinking their investments were safe.

12. As part of the fraudulent scheme, and contrary to the representations to investors, rather than using the victims' money to further Miracle Mansion's creation, development, and construction, BALDWIN spent hundreds of thousands of dollars of victim money for his personal use and benefit and did not report the receipt of those funds on his federal income tax returns, Forms 1040, filed with the Internal Revenue Service. BALDWIN also used at least $150,000 to pay others involved in Miracle Mansion and used investor money to make Ponzi-type payments to previous victims.

13. In order to continue the fraudulent scheme and to avoid detection, BALDWIN made, and caused to be made, materially false and fraudulent representations, concealed, and caused to be concealed, material facts, and told, and caused to be told, deceptive half-truths to lull

3

victims into thinking their investments in the creation, development, and construction of Miracle Mansion were safe.

14.     In order to deceive and to avoid detection from law enforcement, on or about December 8, 2020, BALDWIN made materially false statements, including representations about his use of victims' monies for his personal use and benefit, to a sworn federal law enforcement agent.

## COUNT ONE
15 U.S.C. §§ 78j and 78ff
(Securities Fraud)

15.     The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 14 of the Superseding Bill of Indictment, and further alleges that:

16.     From at least early 2009 through on or about October 19, 2021, in Mecklenburg County, within the Western District of North Carolina and elsewhere, the defendant,

## MICHAEL MANDEL BALDWIN

willfully, directly and indirectly, by use of the means and instrumentalities of interstate commerce and the mails, used and employed manipulative and deceptive devices and contrivances by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would and did operate as a fraud and deceit upon investors and others, in connection with the sale of securities, to wit: the investments in Miracle Mansion described above.

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Sections 2 and 3147.

4

## COUNT TWO
18 U.S.C. § 1343
(Wire Fraud)

17.     The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 14 of the Superseding Bill of Indictment, and further alleges that:

18.     From at least as early as 2009 through on or about October 19, 2021, in Mecklenburg County, within the Western District of North Carolina and elsewhere, the defendant,

### MICHAEL MANDEL BALDWIN

with the intent to defraud, did knowingly and intentionally devise the above-described scheme and artifice to defraud and to obtain money by materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice to defraud, did transmit and cause to be transmitted by means of wire communication in interstate commerce any writing, signal, picture, and sound, *to wit*, emails, telephone calls, wire transfers, and other electronic financial transactions in interstate commerce.

All in violation of Title 18, United States Code, Section 1343.

Case 3:21-cr-00253-MOC-DCK   Document 23   Filed 07/20/22   Page 5 of 6

## NOTICE OF FORFEITURE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

a. All property that constitutes or is derived from proceeds of the violations set forth in this Superseding Bill of Indictment;

b. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the Court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a).

The following property is subject to forfeiture on one or more of the grounds stated above:

a. A forfeiture money judgment in the amount of at least $611,334.91 or such other amount as determined by the Court, such amount constituting the proceeds of the violations set forth in this Superseding Bill of Indictment.

A TRUE BILL:

FOREPERSON

DENA J. KING
UNITED STATES ATTORNEY

CARYN FINLEY
ASSISTANT UNITED STATES ATTORNEY

KENNETH SMITH
ASSISTANT UNITED STATES ATTORNEY

6