IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:21CR253-MOC |
| | ) | |
| v. | ) | UNITED STATES' OMNIBUS |
| | ) | MOTION *IN LIMINE* |
| MICHAEL MANDEL BALDWIN | ) | |
| | ) | |

NOW COMES the United States of America, by and through Dena J. King, United States Attorney for the Western District of North Carolina, and hereby moves this Court *in limine* to preclude the defendant, Michael Mandel Baldwin, from attempting to introduce certain evidence or making certain arguments during the trial of this case. Specifically: (1) any defense witness other than the defendant from testifying about the defendant's mental state; (2) evidence or argument regarding specific instances of the defendant's good or lawful conduct; (3) the defendant from offering under Rule 801(d)(2) out-of-court statements made by himself or his agents; (4) argument or evidence regarding the potential punishment or impact of a conviction on the defendant's family; (5) evidence or argument about the defendant's intention to repay persons who gave him money for Miracle Mansion; and (6) Baldwin's personal background. Additionally, the United States respectfully requests that the Court (1) limit the scope of questioning and testimony about defendant Baldwin's character and (2) treat as non-hearsay the defendant's admissions and contextual statements.

The United States makes this omnibus motion *in limine* to narrow the issues for trial, to exclude irrelevant, extraneous, or unduly prejudicial arguments and evidence, and to expedite this Court's determination of the legal disputes likely to arise during trial. "The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). Likewise,

1

defendant's proposed evidence and argument should be excluded when it "would confuse the jury and misdirect the jury's focus from the issues properly before it." *United States v. Wellons*, 32 F.3d 117, 120 n.3 (4th Cir. 1994).

In the interest of judicial economy, and to facilitate this Court's resolution of legal and evidentiary disputes likely to arise at trial, the Government respectfully submits that the relief sought in this omnibus motion should be granted. Pre-trial rulings on the issues below will expedite the trial by making the presentation of evidence and argument more efficient, and by eliminating the need for argument or briefing on the below issues mid-trial.

## **STANDARD OF REVIEW**

"The decision to admit evidence at trial is committed to the sound discretion of the district court and is subject to reversal only if the court abuses that discretion." *United States v. Jones*, 356 F.3d 529, 535 (4th Cir. 2004). Likewise, "the decision to exclude evidence because of possible prejudicial effect rests in the sound discretion of the trial court." *United States v. Schnabel*, 939 F.2d 197, 202 (4th Cir. 1991). Similarly, "[t]he presiding judge must be and is given great latitude in . . . ensur[ing] that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial . . . he must have broad discretion." *Herring v. New York*, 422 U.S. 853, 862 (1975). "Since it [is] the court's responsibility to present [the law] to the jury in a clear manner, the court [will] not abuse its discretion by requiring the defense counsel to argue consistently with the correct law." *United States v. Wables*, 731 F.2d 440, 449 (7th Cir. 1984).

Moreover, defendant Baldwin has no right to present all evidence and raise all arguments that he wants during his trial. In *United States v.* Lightly, 616 F.3d 321, 359 (4th Cir. 2010), the Fourth Circuit held that

> Although a defendant has a constitutional right to present evidence in his favor, *United States v. Moussaoui,* 382 F.3d 453, 471 (4th Cir.2004), "a defendant's right to present a defense is not absolute: criminal defendants do not have a right to present evidence that the

2

district court, in its discretion, deems irrelevant or immaterial." *United States v. Prince–Oyibo,* 320 F.3d 494, 501 (4th Cir.2003); *see also Crane,* 476 U.S. at 689–90, 106 S.Ct. 2142 (noting that the "Constitution leaves to the judges who must make these decisions wide latitude to exclude evidence that is repetitive ..., only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues").

I. **The Court Should Preclude any Witness other than the Defendant Himself from Testifying about His Mental State or Knowledge**

It is obvious that Rule 704 prevents any defense expert from testifying about a defendant's mental state. It would likewise be inappropriate for any lay witness to give an opinion in the form of testimony about defendant Baldwin's mental state, especially that Baldwin did not have fraudulent intent. Any such testimony would have to be both based on personal knowledge (pursuant to Rule 602) and helpful (pursuant to Rule 701). As the Court of Appeals for the Third Circuit has explained,

> While we have never held that lay opinion evidence concerning the knowledge of a third party is *per se* inadmissible, we have certainly made this kind of evidence difficult to admit. If the witness fails to describe the opinion's basis, in the form of descriptions of specific incidents, the opinion testimony will be rejected on the ground that it is not based on the witness's perceptions. To the extent the witness describes the basis of his or her opinion, that testimony will be rejected on the ground that it is not helpful because the fact finder is able to reach his or her own conclusion, making the opinion testimony irrelevant.

*United States v. Polishan,* 336 F.3d 234, 242 (3d Cir. 2003) (citation omitted). *See United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992) ("When the issue is a party's knowledge, which is perhaps a more easily fathomed state of mind than, for example, intent or motivation, we suspect that in most instances a proffered lay opinion will not meet the requirements of Rule 701."). Put differently, witnesses are not mind-readers who have personal knowledge of a defendant's mental state. And, to the extent some fact known to the witness may be relevant to a defendant's mental state, the witness may testify directly as to that fact and allow "the fact finder . . . to reach his or her own conclusion," *Polishan,* 36 F.3d at 242, about the defendant's mental state. Any

3

deduced opinion by the witness as to the defendant's mental state is irrelevant pursuant to Rule 701.

The general prohibition against lay opinion testimony as to a defendant's state of mind is especially applicable in a fraud case like this one. There will be no dispute that the victims provided funds to Baldwin. The only point of true dispute must be whether the Baldwin had fraudulent intent.

In *United States v. Fowler*, 932 F.2d 306 (4th Cir. 1991), the Fourth Circuit held that the court properly excluded documents suggesting that the rules governing the defendant's conduct were "highly complex, confusing, unclear, and occasionally misunderstood." The court reasoned such reports

> were not relevant to the issue of [the defendant's] state of mind, his intent. They did not assess [the defendant's] actions to determine whether he was confused. They did not discuss whether a person with [the defendant's] experience would be confused. The confusion and corruption of others had no tendency to prove whether [the defendant's] was confused or corrupt. For this reason the reports did not satisfy the definition of relevancy in Rule 401. *Id*. at 313-14.

Similarly, in *United States v. Hauert*, 40 F.3d 197 (7th Cir. 1994), the Seventh Circuit held that the district court properly excluded a witness's testimony as not based on personal knowledge and not helpful when offered "to show [defendant's] knowledge, or lack thereof . . . ." *Id*. at 201 ("[O]pinion testimony on a party's knowledge of the law in most instances . . . will not meet the requirements of Rule 701.") (quotation omitted). Likewise, in that case the witness could not testify as to the "defendant's subjective sincerity, motivation, knowledge, or state of mind." *Id*. Here, the only witness who can and should be permitted to testify as to whether] Baldwin had the relevant fraudulent intent is the defendant himself.

4

## II. The Court Should Preclude Evidence and Argument Regarding Specific Instances of Good or Lawful Conduct

Defendant Baldwin at times may have engaged in good or lawful conduct, and most likely engaged in transactions that were legitimate. Likewise, it may be that Baldwin has performed good acts in connection with his family, friends, or the church where he is a pastor. However, this evidence should not be admitted at trial, and it should not be argued to the jury.

It is well-established that specific instances of good or lawful conduct are not admissible in a criminal trial. *See United States v. Heidecke,* 900 F.2d 1155, 1162 (7th Cir. 1990) ("Proof that a defendant acted lawfully on other occasions is not necessarily proof that he acted lawfully on the occasion alleged in the indictment."); *United States v. Scarpa,* 897 F.2d 63, 70 (2nd Cir. 1990) ("A defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions.") (citations omitted). Every criminal, of course, has intervals in life in which he chooses a lawful path.

Criminal trials are not about the restraint or even good judgment the defendant may have shown in uncharged instances. *See United States v. Marrero,* 904 F.2d 251, 260 (5th Cir. 1990) ("The fact that [the defendant] did not overcharge in every instance in which she had an opportunity to do so is not relevant to whether she, in fact, overcharged as alleged in the indictment."). Rather, criminal trials are about whether the defendant engaged in the criminal conduct for which he is charged. *See also United States v. Hill*, 40 F.3d 164, 168-69 (7th Cir. 1994) (holding that the fact that the defendant did not steal three "test letters" from the mail on other occasions was not admissible to prove or disprove his intent with regard to the stolen letters); *United States v. Camejo,* 929 F.2d 610, 613 (11th Cir. 1991) (drug defendant properly precluded from introducing evidence that he refused an opportunity to become involved in a different narcotics business); *United States v. Beverly*, 913 F.2d 337, 353 (7th Cir. 1990) ("[The defendant]

5

undoubtedly could have called any number of additional witnesses to testify that they never had purchased cocaine from him. Such proof of an assertion by a negative is inadmissible."). Accordingly, evidence or argument about lawful or good conduct is improper in the context of this trial.

Thus, in *United States v. Warner*, 396 F.Supp. 2d 924, 942 (N.D. Ill. 2005), the court properly barred former Illinois Governor Ryan from submitting evidence of his legitimate work while in office, such as commuting death sentences. It rejected Ryan's argument that this evidence was necessary to show "what Ryan *did* in office: how Ryan spent his time, what issues had his attention, what was important to him." *Id*. at 941. As the court noted, "Ryan was no doubt conducting day-to-day, legitimate activities in his positions as Secretary of State and Governor of Illinois, but may also have engaged in fraudulent activities." *Id*. The court concluded that the evidence was properly excluded because, "Ryan's legitimate official acts, such as commuting death sentences, are not alleged to be part of the scheme or conspiracy to commit fraud. Nor are such decisions admissible extrinsic evidence of intent." *Id*. at 942. So, too, Defendant Baldwin's professional or personal "legitimate activities," are not admissible extrinsic evidence of intent, and should be precluded.

### III. The Court Should Prevent the Defendant from Offering His Out-of-Court Statements or Those of His Agents under Rule 801(d)(2)

Defendant Baldwin should not be permitted to introduce his own out-of-court statements or the out-of-court statements of his agents (pursuant to Rule 801(d)(2)). It is well-established that such statements are hearsay pursuant to Rule 801 and are not "admissions by a party opponent" pursuant to Rule 801(d)(2) when offered by a party himself, rather than the party's "opponent." *United States. v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996) ("Admissions by a party-opponent are not considered hearsay and therefore can be admitted against that party . . . [T]he rules do not,

however, provide an exception for self-serving, exculpatory statements made by a party which are being sought for admission by that same party."); *see also United States v. Yousef*, 327 F.3d 56, 153 (2d Cir. 2003) ("while the Government was free to introduce the statement as an admission by a party-opponent, *see* Fed.R.Evid. 801(d)(2)(A), [the defendant] had no right to introduce it on his own"); *United States v. Gossett*, 877 F.2d 901, 906 (11th Cir. 1989) ("The testimony was not admissible under Rule 801(d)(2) because the admission sought to be introduced was made by a co-defendant who is not a party opponent. The Government is the party opponent of both defendants."). Accordingly, the Court should preclude any defense witness from testifying as to the Defendant or his agents' out-of-court statements pursuant to Rule 801(d)(2).

### IV. The Court Should Preclude Argument or Evidence about the Potential Consequences or Penalties upon Conviction

Just like evidence of the Defendant's personal and family characteristics, Baldwin should be precluded from introducing evidence, making an argument, or otherwise mentioning the potential penalties he faces if convicted and the effects of a conviction on him or his family. This information is irrelevant to the jury's determination of guilt or innocence and could unfairly appeal to the jury's sympathies. *See Shannon v. United States*, 512 U.S. 573, 579 (1994) ("The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury."); *United States v. Briscoe*, 574.2d 406, 408 (8th Cir. 1978) ("The penalty to be imposed upon a convicted defendant is generally not a matter for the jury…"); *United States v. D'Arco*, 1991 WL 264504 at *4 (N.D. Ill. Oct. 24, 1991) (holding that "no testimony or argument will be allowed regarding the impact of the trial or possible conviction upon a family member"); *United States v. Shields*, 783 F. Supp. 1094, 1096 (N.D. Ill. 1991) (granting motion in limine precluding "any testimony regarding the possible impact which a conviction might have upon any family member"). While the law prohibiting such references to

7

potential penalties is especially clear, the Government respectfully requests that the Court be vigilant about questions or arguments about the potential punishment maximums the defendant faces. It would be improper for Baldwin to argue to the jury that it should consider potential punishments when determining his guilt or innocence.

V.     **Defendant Baldwin's Intention to Repay Persons Who Gave Him Money Is Irrelevant**

The Court should not allow evidence or argument to support Baldwin's contention that he intended to repay the persons and entities that gave him money. In the Fourth Circuit, "the intent to repay eventually is irrelevant to the question of guilt for fraud." *United States v. Allen*, 491 F.3d. 178, 186 (4th Cir, 2007). In *United States v. Okun,* 2009 WL 414009*, *3 (*E.D.Va. February 18, 2009), the court wrote:

> This bright-line rule is based on the premise that the crime of mail or wire fraud is complete when the defendant makes a knowingly false statement and obtains the target money or property. Thus, the defendant's intention ultimately to repay the money or to restore the property is irrelevant once a fraud has been committed to secure the money or property because the crime already has been successfully completed when the money or property is obtained. *See id.* Indeed, even actual (rather than simply intended) reimbursement of defrauded property is insufficient to demonstrate a lack of intent to defraud. (Cleaned up).

*See Allen,* 491 F.3d at 186; *United States v. Godwin*, 272 F.3d 659, 666 (4th Cir. 2001). Likewise, in *United States v. Curry*, 461 F.3d 452, 458 (4th Cir. 2006), the Fourth Circuit ruled "the defendant's good-faith intention to pay back the loan is no defense because he intended to inflict genuine harm on the [victim]. Because it appears Curry never possessed the coins, he committed fraud each time he represented otherwise and accepted money from buyers. And, his subsequent refund cannot absolve him of responsibility for consummated acts of fraud."

Because Defendant Baldwin's fraud is complete when he knowingly provides materially false information to induce an investment, "it is irrelevant whether or not he intended to repay it or was capable of repaying it." *Allen*, 491 F.3d at 186 (cleaned up).

8

## VI. The Court Should Preclude Argument or Evidence Regarding Defendant's Personal Background

Defendant Baldwin should be precluded from introducing any evidence, making any statement, or asking any questions regarding the defendant's upbringing, family circumstances, or other non-pertinent aspects of defendant's personal background. The defendant may attempt to introduce evidence or make argument that could improperly arouse the sympathy of the jury by, for example, making references to being a minister, his work at various churches, and his work in the community. While laudable, those facts have nothing to do with this trial if offered for the purpose of garnering sympathy. *Cf. United States v. Ramirez,* 482 F.2d 807, 816 (2d Cir. 1973) (prosecutor's argument that jury should not be swayed by sympathy was "especially apt here in light of [the defendant's] manifest pregnancy"). This information, if offered for such purpose, is plainly irrelevant to the charges here and should be excluded under Federal Rules of Evidence 401, 402, and 403. To that end, the Government requests that the defendant be precluded from resorting to a common, yet entirely objectionable, practice of "introducing" the defendant to the jury during opening statement or otherwise by referencing or inquiring about defendant's family history, work history, or any other irrelevant aspect of his background.

Rule 401 dictates that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Rule 402 states that "[i]rrelevant evidence is not admissible." Testimony about a defendant's family or personal background is of no consequence to whether he committed the charged crimes. Even if any of this information was marginally relevant, the introduction of such evidence would still violate Rule 403. Rule 403 allows the court to exclude relevant evidence where the danger of unfair prejudice or confusion of the issues outweighs the probative value of such evidence. A trial court has "wide latitude" to exclude such prejudicial

9

or confusing evidence. *See United States v. Spencer*, 1 F.3d 742, 744 (9th Cir. 1992). The admission of such evidence would be "likely to elicit a response from jurors that cause them to reach a conclusion based on emotion rather than the evidence presented" in violation of Rule 403. *United States v. Ellis*, 147 F.3d 1131, 1136 (9th Cir. 1998).

**VII.    The Scope of the Testimony of the Defendant's Character Witnesses**

Federal Rule of Evidence 405(a) provides:

> In all cases in which evidence of character or a trait of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

Fed. R. Evid. 405(a).

The Fourth Circuit has been clear that "evidence of specific good acts is *not* admissible [under] Fed. R. Evid. 405." *See United States v. Gravely*, 840 F.2d 1156 (4th Cir. 1988) (emphasis added). Rather, when character is not an essential element,[1] "proof of character is limited to general good character (reputation as a good person and law-abiding citizen)." *Id*.[2]

---

[1]    The element of criminal intent does not put character in issue. *See United States v. Camejo*, 929 F.2d 610, 613 (11th Cir. 1991) (rejecting defendant's argument that "one of the essential elements of the offense charged was his *mens rea* during the time he was alleged to have agreed to join this conspiracy," and holding that "[e]vidence of good conduct is not admissible to negate criminal intent."). A holding to the contrary would allow specific conduct character evidence in nearly every case. *See United States v. Doyle*, 130 F.3d 523, 542 (2d Cir. 1997) (excluding the defendant's proffered character evidence in case of conspiracy to commit illegal exportation and holding that "if specific good deeds could be introduced to disprove knowledge or intention, which are elements of most crimes, the exception of Rule 405(b) would swallow the general rule of 405(a) that proof of specific acts is not allowed.").

[2]    As the Advisory Committee Notes to Rule 405 state, "evidence of specific instances of conduct . . . possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time. Consequently, the rule confines the use of evidence of this kind to cases in which character is, in the strict sense, in issue and hence deserving of a searching inquiry. When character is used circumstantially and hence occupies a lesser status in the case, proof may only be by reputation and opinion." Thus, "testimony of specific instances is not generally permissible on the direct examination of an ordinary opinion witness as to character." *Id*.

Justice Jackson, writing for the Supreme Court, explained that limiting character evidence to reputation testimony, or that the witness "has heard nothing against defendant," is "justified by over-whelming considerations of practical convenience in avoiding innumerable collateral issues which, if it were attempted to prove character by direct testimony, would complicate and confuse the trial, distract the minds of jurymen and befog the chief issues in the litigation." *See Michelson v. United States*, 335 U.S. 469, 478 (1948). Justice Jackson explained further that:

> When the defendant elects to initiate a character inquiry . . . such a witness is not allowed to base his testimony on anything but hearsay. What commonly is called "character evidence" is only such when "character" is employed as a synonym for "reputation." *The witness may not testify about defendant's specific acts* or courses of conduct or his possession of a particular disposition or of benign mental and moral traits; nor can he testify that his own acquaintance, observation, and knowledge of defendant leads to his own independent opinion that defendant possesses a good general or specific character, inconsistent with commission of acts charged. The witness is, however, allowed to summarize what he has heard in the community, although much of it may have been said by persons less qualified to judge than himself. The evidence which the law permits is not as to the personality of defendant but only as to the shadow his daily life has cast in his neighborhood.

*Id*. at 477. Thus, character evidence is limited to reputation to avoid "innumerable collateral issues . . . [that would] befog the chief issues in the litigation." *See id*. at 478.

Certainly, character witnesses may not testify about specific instances of Baldwin's good conduct, or that he for example, coaches youth sports, attended youth church activities growing up, attended Bible studies, is "a gentle guy, but very tenacious on the basketball court…" etc. *See Gravely*, 840 F.2d 1164 (precluding character witness from testifying about the defendant's March of Dimes activity). Character witnesses also should not be permitted to reference the Defendant's religious beliefs, of course (if any). *See* Fed. R. Evid. 610 ("Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature the witness' credibility is . . . enhanced."). Thus, the Government respectfully requests that the Court appropriately limit any defense character witness testimony.

Further, the Government respectfully requests that the Defendant be required to instruct any character witnesses he intends to call that they are not permitted to volunteer information as to specific instances of good conduct (like those referenced above), including by providing narrative answers to the below questions. For example, the Government respectfully submits that while it might be appropriate for a witness to answer that he or she knew the Defendant "from church" or "from coaching" and has known Defendant a certain number of years, the witness should be instructed that he or she is not permitted to testify that he or she knows Defendant from Church as he attended the Christian school, played basketball, attended youth activities, attended Bible studies, that he stayed out of trouble, etc.

Lastly, the United States moves *in limine* to appropriately limit the scope of the testimony of Defendant's character witnesses to the following:

1. How the witness knows the Defendant (e.g., "I know Defendant from college").

2. How long the witness has known the Defendant.

3. Whether the witness has an opinion about or is familiar with the Defendant's reputation in the community for the relevant character trait (such as honesty, good moral character, or veracity).

4. What the opinion is, or whether the Defendant has a good reputation in the community for the relevant character trait.[3]

---

[3] The Supreme Court approved a similar line of questions for character witnesses in *Michelson v. United States*, 335 U.S. 469 (1948):

"'Q. Do you know the defendant Michelson? A. Yes.
'Q. How long do you know Mr. Michelson? A. About 30 years.
'Q. Do you know other people who know him? A. Yes.
'Q. Have you have occasion to discuss his reputation for honesty and truthfulness and for being a law-abiding citizen? A. It is very good.
'Q. You have talked to others? A. Yes.
'Q. And what is his reputation? A. Very good.'"

*Id*. at 471-72.

## VIII. Non-Hearsay: Defendant Admissions and Contextual Statements

During its case-in-chief, the Government will present statements, both oral and written, made by Baldwin or his agents. Such statements are admissions. Thus, they are not hearsay and are admissible under Federal Rule of Evidence 801(d)(2). *See United States v. Bourjaily*, 483 U.S. 171, 175 (1987); *United States v. Smith*, 441 F.3d 254, 261 (4th Cir. 2006); *United States v. Neal*, 78 F.3d 901, 904-05 (4th Cir. 1996). With recordings of conversations involving Baldwin, statements made by other participants to the conversation are admissible as non-hearsay where they are "reasonably required to place [defendant's] responses [to those statements] in context." *United States v. Wills*, 346 F.3d 476, 489-90 (4th Cir. 2003). Such third-party statements are necessary to make any incriminating admissions made by the Defendant "intelligible to the jury and recognizable as admissions." *Id.* at 490 (quoting *United States v. Lemonakis*, 485 F.2d 941, 948 (D.C. Cir. 1973)).

## **CONCLUSION**

Accordingly, for the reasons set forth above, the Government respectfully requests that the Court preclude: (1) any defense witness other than the defendant from testifying about the defendant's mental state; (2) evidence or argument regarding specific instances of the defendant's good or lawful conduct; (3) the defendant from offering under Rule 801(d)(2) out-of-court statements made by himself or his agents; (4) argument or evidence regarding the potential punishment or impact of a conviction on the defendant's family; (5) evidence or argument about the defendant's intention to repay persons who gave him money for Miracle Mansion; and (6) Baldwin's personal background. Additionally, the United States respectfully requests that the Court limit the scope of questioning and testimony about defendant Baldwin's character and that Baldwin be required to instruct his witnesses to conform their answers to

13

admissible information.[4] Lastly, the government requests that the Court treat as non-hearsay the defendant's admissions and related contextual statements.

RESPECTFULLY SUBMITTED this 31st day of October 2022.

                                                                         DENA J. KING

                                                                         UNITED STATES ATTORNEY
/s/ CARYN FINLEY
CARYN FINLEY
Assistant United States Attorney
New York Bar Number: 3953882
s/ KENNETH SMITH
KENNETH SMITH
Assistant United States Attorney
North Carolina Bar Number 17934
United States Attorney's Office
227 West Trade Street, Suite 1650
Charlotte, NC 28202
(704) 344-6222 (office)
(704) 344-6629 (facsimile)

---

[4]    To the extent Defendant seeks to introduce character testimony from additional witnesses, the Government also requests that the Court limit Defendant to no more than three character witnesses on the ground that more would be cumulative. The Supreme Court has held that district courts are "invest[ed] with discretion to limit the number of [character] witnesses . . . ." *See Michelson,* 335 U.S. at 480. "Appellate courts have found no abuse of discretion in limiting the number of character witnesses to three per side, but this should be taken only as rule of thumb subject to exceptions in the unusual case." 22 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5269 (2008); *United States v. Scholl,* 166 F.3d 964, 972 (9th Cir. 1999) (approving of district court limiting tax defendant to three character witnesses "on the footing that more would be cumulative"); *United States v. Johnson,* 730 F.2d 683, 688 (11th Cir. 1984) (affirming trial court decision to limit character witnesses to three); *United States v. Jacobs*, 451 F.2d 530, 542 (5th Cir. 1971) ("The court limited the number of character witnesses to be introduced by each defendant to three. By doing so, we do not think he abused his discretion.").