# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO.: 3:21-CR-253-MOC

**UNITED STATES OF AMERICA**

vs.

**MICHAEL MANDEL BALDWIN**

## MICHAEL BALDWIN'S OMNIBUS MOTION IN LIMINE

Michael Baldwin, through undersigned counsel, files this Omnibus Motion in Limine to identify certain legal issues likely to arise at trial.

## BACKGROUND

Michael Baldwin lives in Alexandria, Virginia, with his family. Mr. Baldwin is an Assistant Pastor at Crossroads Baptist Church in Bailey's Crossroads, VA, as well as the founder and CEO of Miracle Mansion LLC. The government alleges that since at least 2009, Mr. Baldwin has perpetrated a scheme to defraud various individuals – all of whom he knows – as well as Harbor Baptist Church in Charlotte, NC, which is led by a close friend, in order to enrich himself. The government alleges that Mr. Baldwin persuaded these individuals and Harbor Baptist Church to give money to Miracle Mansion LLC by making materially false representations. Superseding Bill of Indictment, Doc. 23 ¶ 1.

Michael Baldwin steadfastly denies that he perpetrated a scheme to defraud anyone or that he made any such false representations. Miracle Mansion, rather than a fraudulent scheme used by Mr. Baldwin to trick people out of their money, was – and remains – a mission-oriented

undertaking that, like many big ideas, has yet to become fully realized. In no shape or form has Mr. Baldwin spent the last 14+ years of his life working tirelessly to defraud old friends, members of his church family in Virginia, or a friend's entire congregation at Harbor Baptist Church in Charlotte.

The government likely intends to prove its case by calling, *inter alia*, individuals who gave Miracle Mansion money (known as "Groundswellers") as well as some members of Harbor Baptist Church. Superseding Bill of Indictment, Doc. 23 ¶¶ 7-11. Some government witnesses from Harbor Baptist Church will likely allege that Pastor Simmons, who has led the church since 2014, either naively or knowingly allowed the church to give Mr. Baldwin money as a result of – or perhaps despite – Mr. Baldwin's alleged lies.

Assuming the government's case survives a Rule 29 motion, Mr. Baldwin, through counsel, will present a robust defense that will show how misguided the government's theory is in this case.

1. **Motion in Limine to Prohibit the Prosecution from Referencing, Introducing, or Otherwise Using Audio Obtained by Prosecution Witnesses Concerning Harbor Baptist Church Conversations, Meetings, or Gatherings Until the Court Rules of its Admissibility**

During its investigation, the prosecution obtained audio recordings of conversations, meetings, and/or gatherings at Harbor Baptist Church from three former members of the church: Geronimo Pineda, Rachel Pineda, and Reggie McCauley. The prosecution has not yet indicated how, if at all, it intends to introduce or use these audio recordings which were turned over to the defense in discovery. Out of an abundance of caution, the defense submits this motion in limine to prohibit the prosecution from referencing, introducing, or otherwise using these recordings until the Court has ruled on its admissibility.

Pineda Recordings. One set of recordings was surreptitiously made in 2017-2018 by Geronimo and Rachel Pineda, who are married, and are former members of Harbor Baptist Church. The Pinedas made these surreptitious recordings of private conversations involving Harbor Baptist Church Pastor Kenny Simmons and a small number of his congregants. Some number of the Pineda recordings purport to record Pastor Simmons discussing his decision to fire Rachel Pineda as church secretary, as well as Pastor Simmons and others discussing the church's decision to loan money to Michael Baldwin's Miracle Mansion project. During one of these surreptitiously made recordings, Michael Baldwin appears to be called on the telephone by one of the church members present and placed on speakerphone. Mr. Baldwin, who was not in North Carolina when he was called, was recorded by the Pinedas (it is unclear which one) without Mr. Baldwin's knowledge.

None of these surreptitiously made recordings by the Pinedas constitutes business records. *See* Fed. R. Evid. 803(6). No "agent or employee" of Mr. Baldwin's appears to be present or heard on any of the Pineda recordings. *See* Fed. R. Evid. 801(d)(2). The Pinedas' reasoning and intent for surreptitiously recording Pastor Simmons, carried out in the context of Pastor Simmons terminating Rachel Pineda as a church employee, is highly suspect. *See* 18 U.S.C. § 2511(2)(d) (no safe harbor under the Electronic Communications Privacy Act when a "communication is intercepted to commit any criminal or tortious act in violation of the Constitution or laws of the U.S. or of any State").

Because there are significant evidentiary issues with respect to the introduction and use of the Pineda recordings, Mr. Baldwin, through counsel, makes this motion in limine to surface these concerns and request that the Court prohibit the government from referencing, introducing, or otherwise using these recordings until the Court has ruled on their admissibility.

McCauley Recordings. The other set of recordings were provided by Reggie McCauley to law enforcement. According to the prosecution's write up of an agent's interview of this potential prosecution witness, "McCauley brought with him a thumb drive with all the audio recordings he had pertinent to my investigation (this thumb drive will be contained with the master file)." It appears that Mr. McCauley provided two recordings: one of Pastor Simmons addressing the Harbor Baptist Church congregation in October 2017 and another where Mr. Baldwin appears in person at the church in February 2018.

Other than what Mr. McCauley described to law enforcement as having some responsibility with respect to "audio/visual in the main sanctuary," there is no indication from what the prosecution has provided to date that any of these recordings constitute business records under Fed. R. Evid. 803(6). Moreover, the source of this information (McCauley) and the circumstance of the preparation and production of these recordings lack trustworthiness to satisfy the business records exception under Fed. R. Evid. 803(6). For example, although the law enforcement write up suggests that Mr. McCauley recorded "the Skype session with which Pastor Michael Baldwin spoke to the congregation about the [Miracle Mansion] investment prior to the members vote," (emphasis added) no such recording of Mr. Baldwin was ever produced. Moreover, Harbor Baptist Church reports that it cannot locate the original recordings of these two church-wide gatherings, indicating that Mr. McCauley may have deleted – intentionally or inadvertently – the original recordings.

Accordingly, Mr. Baldwin, through counsel, makes this motion in limine to surface these concerns and request that the Court prohibit the government from referencing, introducing, or otherwise using these recordings until the Court has ruled on their admissibility.

4

2. **Motion in Limine to Prohibit the Prosecution from Making Arguments or Eliciting Speculative Testimony from Witnesses Linking the Financial Circumstances of Harbor Baptist Church to the Alleged Conduct of Mr. Baldwin**

Materials produced in discovery suggest the prosecution may seek to offer evidence from witnesses who purportedly believe that Harbor Baptist Church ("Victim #1" in the Superseding Indictment) suffered financial harm as a result of the church loaning money to Michael Baldwin's Miracle Mansion project. The Court should preclude the prosecution from offering such evidence, or making such arguments, about Harbor Baptist Church's financial circumstances.

The aforementioned evidence is irrelevant to any fact of consequence in this proceeding. Fed. R. Evid. 401, 402. Second, even if deemed relevant, Mr. Baldwin argues the probative value of this evidence is substantially outweighed by the prejudicial danger of misleading the jury to base their decision on improper basis, as well as confusing the issue and needlessly wasting the Court's time. Fed. R. Evid. 403.

If the Court ultimately deems this sort of evidence to be relevant and admissible, Mr. Baldwin requests that the Court require an offer of proof of any witness to show a direct connection or link between the church's financial circumstances to the activity of Mr. Baldwin that is charged in the Superseding Indictment before admitting any such evidence.

3. **Motion in Limine to Prohibit Lay Witnesses from Offering Characterizations of Mr. Baldwin as Engaging in a "Ponzi Scheme"**

Materials produced in discovery suggest that the prosecution may offer evidence from lay witnesses who characterized Mr. Baldwin's business activity as a "Ponzi scheme." The Court should preclude the prosecution from offering such evidence, or making such arguments. The

5

term is prejudicial, inflammatory, and not relevant. Fed. R. Evid. 403. Any such assertions are also impermissible opinion testimony. Fed. R. Evid. 701. Whether Mr. Baldwin committed any of the charged offenses is a decision left to the trier of fact. Misleading opinion testimony "would merely tell the jury what result to reach" on an ultimate issue. Fed. R. Evid. 704, advisory committee notes; *see also United States v. Perkins*, 470 F.3d 150, 158 (4th Cir. 2006) ("conclusory testimony that a company engaged in 'discrimination,' that a landlord was 'negligent,' or that an investment house engaged in a 'fraudulent and manipulative scheme' involves the use of terms with considerable legal baggage; such testimony nearly always invades the province of the jury").

Accordingly, Mr. Baldwin requests that the Court prohibit the government from referencing, introducing, or otherwise using the term "Ponzi scheme" during this trial.

Respectfully submitted this the 31st day of October, 2022.

/s/ C. Melissa Owen
TIN FULTON WALKER & OWEN PLLC
301 East Park Avenue
Charlotte, NC 28203
T: 704-338-1220
F: 704-338-1321
E: cmowen@tinfulton.com

/s/ Jacob H. Sussman
TIN FULTON WALKER & OWEN PLLC
301 East Park Avenue
Charlotte, NC 28203
T: 704-277-3962
F: 704-338-1321
E: jsussman@tinfulton.com