IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO.: 3:21-CR-253-MOC

UNITED STATES OF AMERICA

v.

MICHAEL MANDEL BALDWIN

### MICHAEL BALDWIN'S RULE 29 MOTION
### FOR JUDGMENT OF ACQUITTAL ON COUNT ONE

Mr. Baldwin, through undersigned counsel, pursuant to Rule 29 of the Federal Rules of Criminal Procedure, hereby moves for a judgment of acquittal on Counts One (Securities Fraud). In support of this motion, the defense shows the following:

### LEGAL STANDARD

"The test for deciding a motion for a judgment of acquittal is whether there is substantial evidence … which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." *United States v. MacCloskey*, 682 F.2d 468, 473 (4th Cir. 1982). The district court must "view the evidence in the light most favorable to the prosecution, and inquire whether a rational trier of fact could [find] the essential elements of the charged offense beyond a reasonable doubt." *United States v. Singh*, 518 F.3d 236, 246 (4th Cir. 2008). "While all inferences must be made in favor of the prosecution, leaps of logic should not be." *Evans-Smith v. Taylor*, 19 F.3d 899, 908 n.22 (4th Cir. 1994). "Where … the trier of fact would have … to rely on attenuated inferences [to make a finding] … the finding … cannot stand." *United States v. Hickman*, 626 F.3d 756, 763 (4th Cir. 2010).

1

**ARGUMENT**

Taking the evidence in the government's favor, it has failed to prove each and every element of Count One (Securities Fraud).

I.   **Legal Standard**

Count One requires that the financial transaction at issue meet the definition of a security. The government has not presented evidence that the transactions alleged in the indictment meet the definition of securities. "The test is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *Sec. & Exch. Comm'n v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946). In *Howey*, the Supreme Court articulated an analytical framework to determine when an investment vehicle will be considered an "investment contract" under the federal securities laws. The *Howey* test instructs that an investment contract exists where there has been (i) an investment of money (ii) in a common enterprise (iii) with an expectation of profits garnered "solely" from the efforts of others. *See Teague v. Bakker*, 35 F.3d 978, 986 (4th Cir. 1994); *see also Sec. & Exch. Comm'n v. ETS Payphones, Inc.*, 300 F.3d 1281 (11th Cir., 2002).

The threshold issue here is whether the transactions for which Mr. Baldwin is being prosecuted involved a security. The U.S. Supreme Court has made clear that "Congress did not intend the securities laws to be a broad federal remedy for all fraud." *Marine Bank v. Weaver*, 455 U.S. 551, 556 (1982). In analyzing whether something is a security, courts will look at the economic realities underlying a transaction regardless of its name or form. As the U.S. Supreme Court directs, the Court must analyze the transaction "on the basis of the content of the instruments in question, the purposes intended to be served, and the factual setting as a whole." *Id.* at 560 n.11.

In *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837 (1975), the Supreme Court refused to extend the protections of the securities laws to "stock" in a state-subsidized housing cooperative that were alleged to be "investments contracts." Despite being labeled a "stock," the interest in question was a right to an apartment. It did not appreciate in value, it was not transferrable, and the purchasers were motivated by a desire to use the apartment for their personal use, not a desire to profit. *Id.* at 853.

The second prong of the *Howey* test requires that the investment of money be "in a common enterprise." *Howey*, 328 U.S. at 301. As the Court wrote, "A common enterprise managed by respondents or third parties with adequate personnel and equipment is therefore essential if the investors are to achieve their paramount aim of a return on their investments." *Id.* at 300. *See also United States v. Holtzclaw*, 950 F.Supp. 1306 (S.D.W.Va. 1997), *aff'd in part, vacated in part,* 131 F.3d 137 (4th Cir. 1997) (granting motion to judgment of acquittal because, *inter alia*, the government failed to establish a "common enterprise").

Finally, *Howey* requires that the investor have an expectation of profits garnered "solely" from the efforts of others. The Fourth Circuit interprets this requirement to mean that the "most essential functions or duties must be performed by others and not the investor." *Bailey v. J.W.K. Properties, Inc.,* 904 F.2d 918, 920 (4th Cir.1990). *See also Holtzclaw*, 950 F.Supp. at 1316-1317 (finding, *inter alia*, "scheme sold to the Matewan Church would not qualify as an investment contract because the fourth *Howey* prong is not met. The fourth prong of the *Howey* test requires that the investor expect to earn profits "solely from the efforts of others").

3

Case 3:21-cr-00253-MOC-DCK   Document 52   Filed 11/14/22   Page 3 of 7

## II. Government's Evidence Does Not Establish a Securities Fraud

The evidence presented in the Government's case-in-chief has focused on two sets of transactions involving Miracle Mansion: money committed by individuals pursuant to "Groundswell" fundraising (e.g., $73 per month for 73 months) and money committed by Harbor Baptist Church in 2015 and 2016. The evidence presented, taken in the light most favorable to the prosecution, shows that every person who gave money to Michael Baldwin and Miracle Mansion had the understanding that it would be repaid -- no matter what it was called and no matter what happened with Miracle Mansion -- along with interest. For example, government witnesses Kevin Jarrett, Carol Ware, and Robert Jenkins testified that they understood that their money would be returned with interest. The return of those funds was not related to or other connected with the success of Miracle Mansion. During Carol Ware's testimony, the government introduced the "term sheet" that she (and other) early supporters signed. That term sheet plainly describes a loan agreement to repaid (without exception) plus interest in 73 months. [Gov. Ex. 53]

Similarly, the evidence concerning the terms of Harbor Baptist Church transactions make clear that those committing money to Miracle Mansion understood that those funds would be returned within five years plus interest. The terms of the largest such transaction ($300,000) were spelled out in a Promissory Note requiring repayment at a fixed rate due in five years. This note is consistent with the testimony of Pastor Kenneth Simmons: that the money from Harbor Baptist Church plus interest was to be repaid (without exception) with interest in five years. [Gov. Ex. 10]

The other smaller transactions between Miracle Mansion and Harbor Baptist Church were not subject to a promissory note although the government's evidence, through Pastor Simmons, was that these funds were loans with the same terms of repayment. While three prosecution

4

witnesses (e.g., Reggie McCauley, Darryl Crenshaw, Derrick Smith) asserted that they understood, at some point in time prior to the church voting in favor of the transaction, that the Harbor Baptist Church money was supposed to involve an "investment," even in the light most favorable to the prosecution, that evidence is wholly overcome by the terms of the ultimate transaction. [Gov. Ex. 10; Simmons's testimony] Moreover, there is no evidence that anyone who voted in favor of any of these transactions did so on the basis or with an understanding that it was an investment rather than a loan with interest. Neither Mr. McCauley, Mr. Smith, nor Mr. Crenshaw voted in favor of any transaction and/or abstained altogether.

Because the transactions do not constitute securities, Count One must be dismissed.

Moreover, there is no evidence that the transactions of anyone involved were dependent upon the "pooling" of other participants' money. The Eleventh Circuit noted that "[m]ost circuits that have considered the issue [of what is a common enterprise] find it satisfied where a movant shows 'horizontal commonality,' that is the 'pooling' of investors' funds as a result of which the individual investors share all the risks and benefits of the business enterprise." *Sec. & Exch. Comm'n v. ETS Payphones, Inc.*, 300 F.3d 1281, 1284 (11th Cir., 2002). The Fourth Circuit applies the same analytical approach. *See Teague v. Bakker*, 35 F.3d 978, 986 n.8 (4th Cir. 1994). The evidence fails to establish that there was any "commonality" amongst or between the different people or entities involved. *See*, *e.g.*, *Wals v. Fox Hills Dev. Corp.*, 24 F.3d 1016, 1018 (7th Cir. 1994) ("Other circuits, including our own, require more—require "horizontal commonality," that is, a pooling of interests not only between the developer or promoter and each individual "investor" but also among the "investors" … require, in short, a wheel and not just a hub and a spoke").

5

The evidence presented by the government suggests two separate, unconnected sets of transactions: monies from Groundswellers and monies from Harbor Baptist Church. The government has failed to establish any commonality amongst or between the different people involved. *See United States v. Holtzclaw*, 950 F.Supp. 1306 (S.D.W.Va. 1997) (granting judgment of acquittal because transactions in question did not involve a "security" because absence of a "common enterprise").

Lastly, there is simply insufficient evidence to support the third prong in *Howey*: that the investors have an expectation of profits garnered "solely" from the efforts of others. Those who committed funds to Miracle Mansion understood that Miracle Mansion, by and through Michael Baldwin, was committed to paying them back regardless of the efforts of others. Their participation was part of an otherwise routine commercial loan transaction beyond the reach of federal securities laws. *See United Am. Bank of Nashville v. Gunter*, 620 F.2d 1108, 1118-1119 (5th Cir. 1980) (holding that party's loan participation is not a security under because "participation was not an investment premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others. Rather, the participation was part of a routine commercial loan transaction beyond the purview of the federal securities laws.") As noted above, the Fourth Circuit interprets this requirement to mean that the "most essential functions or duties must be performed by others and not the investor." *Bailey*, 904 F.2d at 920.

The U.S. Supreme Court's mandate in *Marine Bank* is that the underlying substance of a transaction must be discerned from all the existing circumstances by analyzing the content of the instruments involved, the purposes to be served, and the factual setting as a whole. *Marine Bank*, 455 U.S. at 560 n.11. Here, the government has failed to establish that these transactions were

6

anything other than loans that would be paid back, with interest, by the company and/or Mr. Baldwin at the conclusion of the terms agreed upon, regardless of any other fact or development.

For these reasons, Mr. Baldwin, through counsel, respectfully requests that the Court dismiss Count One under Rule 29.

Respectfully submitted this the 14th day of November, 2022.

/s/ C. Melissa Owen
TIN FULTON WALKER & OWEN PLLC
301 East Park Avenue
Charlotte, NC 28203
T: 704-338-1220
F: 704-338-1321
E: cmowen@tinfulton.com


/s/ Jacob H. Sussman
TIN FULTON WALKER & OWEN PLLC
301 East Park Avenue
Charlotte, NC 28203
T: 704-277-3962
F: 704-338-1321
E: jsussman@tinfulton.com
E: jakesussmanlaw@gmail.com